**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DAYS INNS WORLDWIDE, INC., | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | No. 2:13-cv-04484 (WHW) |
| KB WILSONVILLE, LLC, et al., | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Plaintiff Days Inns Worldwide, Inc. ("DIW") moves for entry of default judgment against KB Wilsonville, LLC ("KB Wilsonville"), Pranav Patel, Subhast Chandra Kharod, Sant Prakash Bhagat, and Pankaj Bhagat (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). The motion has been decided from the written submissions of the parties under Federal Rule of Civil Procedure 78. DIW's motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff DIW is a corporation organized and existing under the laws of Delaware, with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1. Defendant KB Wilsonville is a corporation organized and existing under the laws of Oregon, with its principal place of business at 8855 S.W. Citizens Drive, Wilsonville, Oregon 97070. *Id.* ¶ 2. Defendants Subhast Chandra Kharod, Sant Prakash Bhagat, and Pankaj Bhagat are members of KB Wilsonville and citizens of Oregon, having an address at 8855 S.W. Citizens Drive, Wilsonville, Oregon 97070. *Id.* ¶¶ 5-7.

**NOT FOR PUBLICATION**

Defendant Pranav Patel is a member of KB Wilsonville and a citizen of Oregon, having an address at 112 W. 2nd Street, The Dalles, Oregon 97058. *Id.* ¶ 3.

On September 18, 2008, DIW entered into a franchise agreement (the "Franchise Agreement") with KB Wilsonville for the operation of a 64-room Days Inn® guest lodging facility located at 8855 S.W. Citizens Drive, Wilsonville, Oregon 97070, Site No. 31405-81548-01 (the "Facility"). *See* Aff. of Suzanne Fenimore in Supp. of Mot. for Final J. by Default ("Fenimore Aff.") Ex. A. The Franchise Agreement provided for multiple obligations on behalf of Defendants. Under section 5 of the Franchise Agreement, KB Wilsonville was obligated to operate a Days Inn® guest lodging facility for a fifteen-year term. *See id.* Ex. A § 5. Under section 7, section 18.2 and Schedule C of the Franchise Agreement, KB Wilsonville was required to make certain periodic payments to DIW for royalties, system assessment fees, taxes, interest, reservation system user fees, and other fees (collectively, the "Recurring Fees"). *See id.* Ex. A §§ 7, 18.2, Schedule C. KB Wilsonville also agreed, under section 7.3 of the Franchise Agreement, that interest was payable "on any past due amount payable to [DIW] under this [Franchise] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." *Id.* Ex. A § 7.3. Under section 3.6, KB Wilsonville was required to disclose to DIW, among other things, the amount of gross room revenue earned by KB Wilsonville at the Facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to DIW. *Id.* Ex. A § 3.6. Also under that section, KB Wilsonville agreed to maintain at the Facility accurate financial information, including books, records, and accounts, relating to the gross room revenue of the Facility, and KB Wilsonville agreed to allow DIW to examine, audit, and make copies of the entries in these books, records and accounts. *Id.* Ex. A §§ 3.6, 4.8. Under section 9 of the Franchise Agreement, KB Wilsonville could

not lease the Facility, nor engage in any change, assignment, transfer, conveyance, or pledge of its interest, except with DIW's prior written consent. Any attempted transfer, assignment, conveyance, or pledge not in accordance with section 9 of the Franchise Agreement would be void as between DIW and KB Wilsonville, and would give DIW the right to terminate the Franchise Agreement. *Id.* Ex. A § 9.

Section 11.2 of the Franchise Agreement provided that DIW could terminate the franchise agreement, with notice to KB Wilsonville, if KB Wilsonville (a) discontinued operating the Facility as a Days Inn® guest lodging establishment, and/or (b) lost possession or the right to possession of the Facility. *Id.* Ex. A § 11.2. In the event of termination of the Franchise Agreement under section 11.2, section 12.1 of the Franchise Agreement provided that KB Wilsonville would pay liquidated damages to DIW in accordance with a formula specified in the Franchise Agreement. *Id.* Ex. A § 12.1. Section 18.1 of the Franchise Agreement specifically set liquidated damages for the Facility at $1,000.00 for each guest room of the Facility KB Wilsonville was authorized to operate at the time of termination. *Id.* Ex. A § 18.1. KB Wilsonville also agreed, under section 17.4 of the Franchise Agreement, that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [Franchise] Agreement or collect amounts owed under this [Franchise] Agreement." *Id.* Ex. A § 17.4.

On September 18, 2008, DIW entered into a Connectivity Equipment Lease and Services Addendum (the "Connectivity Addendum") with KB Wilsonville. *See id.* Ex. B. Under section 12(c) of the Connectivity Addendum, KB Wilsonville agreed that, in the event of a termination of the Connectivity Addendum, including by virtue of termination of the Franchise Agreement, it

3

**NOT FOR PUBLICATION**

would pay Connectivity Addendum Liquidated Damages to DIW in the amount of $2,500.00 within 10 days following the date of termination. *Id.* Ex. B § 12(c).

Effective as of the date of the Franchise Agreement, Pranav Patel, Jayantibai Patel,[1] Subhast Chandra Kharod, Sant Prakash Bhagat, and Pankaj Bhagat provided DIW with a Guaranty of KB Wilsonville's obligations under the Franchise Agreement. *See id.* Ex. C. Under the terms of the Guaranty, Pranav Patel, Jayantibai Patel, Subhast Chandra Kharod, Sant Prakash Bhagat, and Pankaj Bhagat agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause [KB Wilsonville] to perform, each unpaid or unperformed obligation of [KB Wilsonville] under the [Franchise] Agreement." *Id.* Pranav Patel, Jayantibai Patel, Subhast Chandra Kharod, Sant Prakash Bhagat, and Pankaj Bhagat also agreed, under the terms of the Guaranty, to pay the costs, including reasonable attorneys' fees, incurred by DIW in enforcing its rights or remedies under the Guaranty or the Franchise Agreement. *Id.*

On February 12, 2011, KB Wilsonville relinquished control of the Facility to a third party. *Id.* ¶ 29. By letter dated March 31, 2011, DIW acknowledged KB Wilsonville's unilateral termination of the Franchise Agreement, effective February 12, 2011, and advised KB Wilsonville that it was required to pay the sum of $66,500.00 to DIW as liquidated damages for premature termination as required under the Franchise Agreement and Connectivity Addendum, and all outstanding Recurring Fees through the date of termination. Fenimore Aff. Ex. D.

Because Defendants never paid those amounts, the complaint in this matter was filed on July 25, 2013. ECF No. 1; Certification of Bryan P. Couch in Supp. of Mot. for Final J. by Default

---

[1] While it appears that Jayantibai Patel was a member of KB Wilsonville and signed a Guaranty for the Facility, DIW did not request default against him, and the Clerk of the Court did not enter default against him. As such, Jayantibai Patel is not included as a defendant for the purposes of DIW's motion for default judgment or this Court's opinion granting that motion.

**NOT FOR PUBLICATION**

("Couch Cert.") ¶ 3. Also on July 25, 2013, the summons and complaint were forwarded to Recon Management Group to effectuate personal service upon Defendants. Couch Cert. ¶ 4. The summons and complaint were served upon Subhast Chandra Kharod on August 28, 2013 and upon Pankaj Bhagat on August 30, 2013, as appears from the returns of service filed with the Court. *Id.* ¶¶ 5-6; ECF Nos. 5, 6. Despite diligent efforts and inquiry, Recon Management Group has been unable to locate defendants KB Wilsonville, Pranav Patel, and Sant Prakash Bhagat. Couch Cert. ¶¶ 7-9. By letter dated September 18, 2013, DIW served KB Wilsonville, Pranav Patel, and Sant Prakash Bhagat with a copy of the summons and complaint via certified and regular mail under New Jersey Court Rule 4:4-4(b)(1)(C). *Id.* ¶ 10. The time in which Defendants had to answer or otherwise respond to the complaint expired, and Defendants did not answer or otherwise move. *Id.* ¶ 11. Default was entered by the Clerk of the Court against Defendants on October 30, 2013 for their failure to plead or otherwise defend this action. *Id.* ¶ 12. By letter dated October 30, 2013, DIW served a copy of the default upon Defendants. *Id.* Ex. E.

DIW moved for default judgment on March 14, 2013. ECF No. 10.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. The power to grant default judgment "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted). Because the entry of default prevents claims from being decided on the merits, courts do "not favor entry of defaults or default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984).

**NOT FOR PUBLICATION**

The Third Circuit considers three factors in determining "whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). The court must, however, make "an independent inquiry into 'whether the unchallenged facts constitute a legitimate cause of action'" and "must make an independent determination" regarding questions of law. *Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-cv-1581(PGS), 2007 WL 1674485, at *4 (D.N.J. June 8, 2007). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.     Default Judgment is Appropriate

This cause of action is based on the Defendants' breach of contract. The elements of such a claim are "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Here, the parties entered into the Franchise Agreement, Connectivity Addendum and Guaranty for the operation of a lodging

facility. Defendants breached those contracts by prematurely terminating (by relinquishing control of the Facility to a third party) the Franchise Agreement and the Connectivity Addendum and not paying the liquidated damages or the Recurring Fees they owed DIW as a result of that termination. Damages flowed therefrom because DIW performed services without being compensated for them (the Recurring Fees) and DIW has not been compensated for the reasonable liquidated damages agreed to by contract. DIW performed its own contractual obligations under the Franchise Agreement and Connectivity Addendum because it performed the services contracted for and only terminated the Franchise Agreement and Connectivity Addendum upon notification from Defendants that Defendants had lost possession of the Facility to a third party, a proper termination under the Franchise Agreement and Connectivity Addendum. DIW has pled the elements of this claim and put forth unchallenged facts which constitute a legitimate cause of action.

Under the *Chamberlain* factors, default judgment is appropriate. DIW will suffer prejudice if default is denied because it has already waited over three years since terminating the Franchise Agreement and Connectivity Addendum to be paid the Recurring Fees and the liquidated damages it is entitled to under the contracts. The Defendants have not presented any facts or arguments to suggest they have a litigable defense for their breaches of contract with DIW. It is not clear if Defendants' failure to litigate is the result of willful or bad faith conduct, though they have failed to retain counsel for over nine months since the filing of the complaint. Having considered these three factors, the Court finds that default judgment is appropriate.

**II.     Damages**

DIW seeks damages that include the Recurring Fees ($95,609.25 including interest calculated at 1.5% per month under section 7.3 of the Franchise Agreement), liquidated damages ($64,000.00 under sections 12.1 and 18.1 of the Franchise Agreement, and $2,500.00 under section

**NOT FOR PUBLICATION**

12(c) of the Connectivity Addendum, plus interest on that amount calculated at the rate of 1.5% per month for a total of $36,834.40), attorneys' fees ($7,800.00 under section 17.4 of the Franchise Agreement), and costs ($1,303.21, also under section 17.4 of the Franchise Agreement). The Court has reviewed DIW's submissions and finds that these amounts accurately represent the amount Defendants owe DIW under the Franchise Agreement, Connectivity Addendum and Guaranty. *See* Fenimore Aff. ¶¶ 21-31; *id.* Ex. E (Itemized Statement of Recurring Fees); *id.* Ex. F (Itemized Breakdown of Amounts Owed); Couch Cert., Ex. F (Attorney Billing Records). Judgment will be entered against Defendants in the amount of $208,046.86.

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered against Defendants in the amount of $208,046.86.

May 13, 2014

                                                 **/s/ William H. Walls**
                                                 United States Senior District Judge